JUSTICE REGNIER
delivered the Opinion of the Court.
The cases of Davis, et al. v. Union Pacific Railroad Company (hereinafter Union Pacific) and Hull, Miesen, Pointer, Samter, Nelson, and Carter v. Burlington Northern Railroad Company (hereinafter Burlington Northern) have been consolidated for our consideration since similar issues are raised in each case. These consolidated appeals involve railroad workers who have sued their employers for personal injuries under the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51-60 (1994).
The 1995 Montana Legislature amended Montana’s venue statutes by adding subsection (2) to § 25-2-122, MCA, which provides specific venues for tort suits brought against nonresident corporations. In each case, the defendant, relying on the amended § 25-2-122, MCA, moved for a change of venue. Some district courts have granted the defendants’ motions for change of venue and others have denied *237 them, depending upon their respective interpretations of the amended statute.
The following issue is on appeal:
Does § 25-2-122(2), MCA, providing specific venues for tort suits brought against nonresident corporate defendants, violate constitutional guarantees of equal protection?
FACTUAL BACKGROUND
In 1995, the Montana Legislature amended Montana’s venue statutes by adding subsection (2) to § 25-2-122, MCA, restricting the choice of venue for plaintiffs bringing tort suits against nonresident corporate defendants. The statute at issue in this appeal provides:
If the defendant is a corporation incorporated in a state other than Montana, the proper place of trial for a tort action is:
(a) the county where the tort was committed;
(b) the county in which the plaintiff resides; or
(c) the county in which the corporation’s resident agent is located, as required by law, or in the first judicial district.
Section 25-2-122(2), MCA.
Before the enactment of the 1995 amendment, § 25-2-118, MCA, the general venue statute, controlled the place of venue for a tort action against an out-of-state defendant, including a corporate defendant. Section 25-2-118, MCA, reads:
Unless otherwise specified in this part:
(1) except as provided in subsection (3), the proper place of trial for all civil actions is the county in which the defendants or any of them reside at the commencement of the action;
(2) if none of the defendants reside in the state; the proper place of trial is any county the plaintiff designates in the complaint ....
In the action against Union Pacific, the plaintiffs allege that due to the negligence of Union Pacific, they have been exposed to loud noise in their workplace resulting in hearing loss. All plaintiffs reside outside of the state of Montana, and none of the acts or occurrences which form the bases of the complaints occurred in Montana. Defendant Union Pacific, is incorporated in the state of Utah, operating its railroad business in several Montana counties and has its registered agent for Montana located in Lewis and Clark County.
Each of the plaintiffs’ FELA claims were filed in Silver Bow County, Montana. The defendant filed a motion for a change of venue based on the Legislature’s amendment to § 25-2-122(2), MCA. This amend *238 ment became effective October 1, 1995. The plaintiffs all filed their complaints in Silver Bow County after that date. The Second Judicial District Court ruled that Silver Bow County was an appropriate venue for their causes of action to be filed. The defendant then filed a motion for reconsideration and request for hearing. Following argument, the District Corut reaffirmed the plaintiffs’ right to bring the action in Silver Bow County, finding that the 1995 amendment to § 25-2-122, MCA, supplemented the more general venue provisions in § 25-2-118, MCA, to provide additional counties in which to file tort actions against nonresident defendants.
The cases that involve Burlington Northern share a similar procedural history to the Union Pacific cases. In the first case, plaintiff Robert Hull was a resident of Flathead County, where the alleged injury occurred. Burlington Northern is incorporated in Delaware and has its registered agent for Montana located in Lewis and Clark County.
Hull filed his FELA action in Cascade County on August 14,1995. Burlington Northern filed a motion to change venue under the terms of § 25-2-122(2), MCA. Hull argued that since his complaint was filed prior to October 1, 1995, his case should be entitled to proceed in Cascade Comity. The Eighth Judicial District Court granted the motion for a change of venue to Flathead County under the terms of § 25-2-122(2), MCA, holding the change in the venue statute was procedural and not substantive. Thus, § 25-2-122(2), MCA, could be applied retroactively to a complaint filed before the effective date of the amendment.
In the second case, plaintiffs Meisen, Pointer, and Samter filed their FELA actions in Silver Bow County on September 26, 1995. Meisen was a resident of Flathead County, where his alleged injury occurred. Pointer and Samter were not residents of Montana and allege that they were injured in Nebraska and Idaho respectively. Burlington Northern filed a motion to change venue in each case. The Second Judicial District Court denied the motion for a change of venue on the grounds that § 25-2-122, MCA, provided an alternative to the more general venue provisions in § 25-2-118, MCA. On reconsideration, the District Court held that the amendment to the venue statute affected substantive rights and could not be applied retroactively to actions filed before the amendment became effective.
In the next case, plaintiffs Donnie Nelson and Larry Carter filed FELA actions against Burlington Northern in Cascade County. Nelson was injured on January 26,1991, in Hill County, which was also *239 where he resided at the time. Carter was injured on February 9,1993, in Flathead County where he resided. Nelson filed his lawsuit on May 19, 1995. Carter filed his lawsuit on October 16, 1995. Burlington Northern filed motions to change venue based on the 1995 amendment to § 25-2-122, MCA, in both cases. In Nelson’s case, the railroad argued that the 1995 amendment was retroactive and that it applied to Nelson’s case, even though that case had been filed prior to the October 1, 1995, effective date. The Eighth Judicial District Court granted the railroad’s motions in both cases pursuant to § 25-2-122(2), MCA.
For purposes of the following discussion, Davis, Hull, Miesen, Pointer, Samter, Nelson, Carter, and others will be referred to as “railroad workers.” Union Pacific Railroad Company and Burlington Northern Railroad Company will be referred as the “railroad companies.”
STANDARD OF REVIEW
A legislative enactment is presumed to be constitutional and will be upheld on review except when proven to be unconstitutional beyond a reasonable doubt. State v. Lilburn (1994), 265 Mont. 258, 262, 875 P.2d 1036, 1039 (citing City of Billings v. Laedeke (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349).
There are limitations governing a court’s ability to declare a statute unconstitutional. We take cognizance of the following cautions:
[I]t is our sacred duty to measure the Act by the terms of our constitutional limitations, as we interpret them. “It must be evident to anyone that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility. The legislative and judicial are co-ordinate departments of the government of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly while acting within the limits of its authority be subjected to the control or supervision of the other without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it. The Constitution apportions the powers of governments but it does not make any one of the three departments subordinate to another when exercising the trust committed to it. The courts may declare legislative enactments unconstitutional and void in some cases, but not because *240 the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it.”
State, ex rel. Mills v. Dixon (1923), 66 Mont. 76, 84-85, 213 P. 227, 229. Additionally:
When a legislative course of action expressed in statutes or budgetary laws is tested for constitutionality under the State Constitution, our review is circumscribed by certain principles. We must give the state constitutional provision a broad and liberal construction consistent with the intent of the people adopting it to serve the needs of a growing state. The constitutional provision should receive a reasonable and practical interpretation in accord with common sense. The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.
Fallon County v. State (1988), 231 Mont. 443, 445-46, 753 P.2d 338, 339-40 (citations omitted). Furthermore, every possible presumption must be indulged in favor of the constitutionality of the Act. See State v. Safeway Stores, Inc. (1938), 106 Mont. 182, 199, 76 P.2d 81, 84.
Notwithstanding the deference that must be given to the Legislature when it enacts a law, it is the express function and duty of this Court to ensure that all Montanans are afforded equal protection under the law. Article II, Section 4, of the 1972 Montana Constitution states that:
The dignity of the human being is inviolable. No person shall be denied equal protection of the laws. Neither the State nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.
The principal purpose of the Equal Protection Clause, Article II, Section 4, of the Montana Constitution, is to ensure that persons who are citizens are not subject to arbitrary and discriminatory state action. Godfrey v. State Fish & Game Comm’n (1981), 193 Mont. 304, 306, 631 P.2d 1265, 1267.
*241 DISCUSSION
Does § 25-2-122(2), MCA, providing specific venues for tort suits brought against nonresident corporate defendants, violate constitutional guarantees of equal protection?
The railroad workers contend that the 1995 amendment to the venue statute, § 25-2-122(2), MCA, conflicts with Article II, Section 16, of the Montana Constitution, stating that the “[c]ourts of justice shall be open to every person.” This part of Article II, Section 16, is commonly known as the “open access to the courts” provision. They challenge § 25-2-122(2), MCA, and assert that, without any showing of a compelling state interest, the statute denies a person’s fundamental right to open access to the courts.
The railroad companies counter that, although the State Constitution guarantees a right of access to the courts, the Legislature retains the power to define the scope and extent of that right. The companies contend that the venue statute does not leave the railroad workers without access to the courts of Montana, but merely specifies available venues within the state court system where they may bring tort lawsuits against nonresident corporate defendants.
When scrutinizing the constitutionality of legislation under an equal protection attack, this Court reviews the legislation under one of three recognized levels of scrutiny. The most stringent standard, strict scrutiny, is used when the action complained of infringes upon the exercise of a fundamental right or discriminates against a suspect class, such as race or national origin. Gulbrandson v. Carey (1995), 272 Mont. 494, 502, 901 P.2d 573, 579. Strict scrutiny has been limited to those instances when either a fundamental right has been infringed or a suspect classification has been established. Strict scrutiny requires the government to show a compelling state interest for its action. Butte Community Union v. Lewis (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.
Middle-tier scrutiny has been used in limited situations, including those where the rights at issue have some origin in the Montana Constitution, such as welfare, but are not found in the Declaration of Rights. Middle-tier scrutiny requires the state to demonstrate that its classification is reasonable and that its interest in the classification is greater than that of the individual’s interest in the right infringed. Butte Community Union, 219 Mont. at 434, 712 P.2d at 1314.
When the right under examination is not determined to be fundamental and does not warrant middle-tier scrutiny, it is reviewed *242 under a rational basis test. This test requires the government to show that the objective of the statute was legitimate and bears a rational relationship to the classification used by the Legislature. Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 744 P.2d 895.
The railroad workers strongly urge this Court to analyze the amendment to the venue statute under a strict scrutiny, or at the very least, a middle-tier test. They argue that restricting venue choices, especially to FELA claimants, limits their access to the courts and violates Article II, Section 16, of the Montana Constitution. Alternatively, if this Court concludes that venue rights are not the proper subject matter for strict scrutiny, the workers urge that their constitutional rights are at the very least “implicated” by the amendment and our analysis should proceed under a middle-tier test. State ex rel. Bartmess v. School Dist. No. 1 (1986), 223 Mont. 269, 726 P.2d 801. The railroad companies argue that the classification at issue in § 25-2-122(2), MCA, involves neither a fundamental right nor a suspect class so the appropriate standard for review is the rational basis test.
In Ford v. Burlington Northern R.R. (1991), 250 Mont. 188, 819 P.2d 169, aff’d, 504 U.S. 648, 112 S. Ct. 2184, 119 L.Ed.2d 432 (1992), we applied the rational basis test when determining whether § 25-2-118, MCA, another venue statute, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by treating nonresidents differently from residents for purposes of venue. We see no reason to adopt a different test in the present case. Limiting venue does not affect access to the courts, but rather specifies the appropriate venues available. Neither does venue implicate rights which require the application of the middle-tier test. Therefore, the Legislature may, in its discretion, fix the venue or place of trial of civil actions so long as the statute it enacts does not violate equal protection of the laws and does not arbitrarily and unreasonably discriminate against a particular person. Fraser v. Smith (1954), 128 Mont. 160, 273 P.2d 105.
Using the rational basis test, this Court must determine if there is a legitimate governmental objective which bears some identifiable rational relationship to the discriminatory classification. Godfrey, 193 Mont, at 307, 631 P.2d at 1267.
A classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws. As we have previously held, equal protection *243 of the laws requires that all persons be treated alike under like circumstances.
Tipco Corp., Inc. v. City of Billings (1982), 197 Mont. 339, 346, 642 P.2d 1074, 1078 (citations omitted). In this instance, we must determine whether the amendment to the venue statute has a sufficiently reasonable relation to a proper legislative purpose so as not to be deemed arbitrary. A classification having some reasonable basis does not deny equal protection merely because it is not made with precise mathematical nicety or results in some inequality. State v. Jack (1975), 167 Mont. 456, 539 P.2d 726.
When analyzing equal protection claims under the rational basis test, this Court has struck down laws creating arbitrary classifications without a legitimate state interest as unconstitutional. See, e.g., McKamey v. State (1994), 268 Mont. 137, 885 P.2d 515 (holding requirement that firefighters be members of the military violative of equal protection); Arneson v. State (1993), 262 Mont. 269, 864 P.2d 1245 (holding that statute regarding post-retirement increases in pension violated equal protection); Brewer v. Ski-Lift, Inc. (1988), 234 Mont. 109, 762 P.2d 226 (holding that portions of the “skier’s responsibility” statutes violated equal protection); Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 744 P.2d 895 (holding workers’ compensation statute requiring family members to elect special coverage unconstitutional); Oberg v. City of Billings (1983), 207 Mont. 277, 674 P.2d 494 (holding statute prohibiting polygraph tests except for law enforcement violated equal protection).
There is no question that under § 25-2-122(2), MCA, tort victims are not treated equally. Tort victims injured by nonresident corporations are subject to the restrictive venue limitations of § 25-2-122(2), MCA. Tort victims injured by individuals or other unincorporated, nonresident defendants are not subject to the venue limitations of § 25-2-122(2), MCA. They may still file their action in any county they wish, pursuant to § 25-2-118(2), MCA. The legislation clearly discriminates against the tort victim injured by a corporate nonresident. The question is whether or not there is a rational basis to make the classification.
The statute’s constitutional defects are revealed when reviewed in light of its practical application. Jack, 167 Mont, at 462, 539 P.2d at 729. The following example illustrates how the classification leads to arbitrary results. If two Montana residents traveling west toward Missoula on 1-90 were involved in separate car accidents, each as a result of an out-of-state defendant’s negligence, both victims would *244 have the option of filing a tort claim and suing for damages in state court. If one defendant was an out-of-state individual, the victim may sue that person in any county in Montana. However, if the other defendant was an out-of-state corporation, the victim’s choice of venue would be limited to (1) the county of his residence, (2) the county where the tort occurred, (3) the county where the out-of-state corporation has its resident agent, or (4) Lewis and Clark County.
In the example above, similarly situated plaintiffs are given vastly different venue options by the state. The statute, § 25-2-122(2), MCA, operates unequally on two different classes of people. One victim has the opportunity to file a tort action in any of Montana’s fifty-six counties. However, the other victim’s choice of venue is limited to a maximum of four counties, solely due to the corporate status of the defendant.
The railroad companies argue that the Legislature acted reasonably in distinguishing nonresident corporations as a class from other nonresident defendants. The railroads assert that as nonresident corporations, they are required to have a registered agent in Montana, pay license fees and other taxes to the state, and many of the corporations provide a livelihood to many Montanans. In contrast they argue that nonresident, noncorporate entities typically have only a transitory connection to the state, and thus, they can be reasonably distinguished from the class of nonresident defendants as a whole.
We do not find this argument persuasive. Corporations are not the only nonresidents that contribute substantially to the Montana economy. Both nonresident individuals, limited partnerships, and partnerships pay taxes, own property, and employ Montanans. It does not appear that the statute was intended to benefit nonresidents because of their contributions to the state economy. By its operation, the statute discriminates against victims of nonresident corporations. The railroad companies have failed to show some legitimate state objective for the statute. When the Legislature changes venue statutes in such a way as to discriminate among plaintiffs as to their choice of forum, there must be a rational basis for that discriminatory impact. Here, there is no reasonable basis to the classification that permits a plaintiff injured by a nonresident individual to be able to file a claim in any county, while restricting plaintiffs who have been injured by a nonresident corporation to bring suit in a limited number of counties.
The railroad companies assert that § 25-2-122(2), MCA, does not deprive plaintiffs of equal protection by limiting their choice of venue. *245 The railroad companies rely upon Ford v. Burlington Northern R.R. (1991), 250 Mont. at 197, 819 P.2d at 175, where this Court held that the venue statutes that discriminated between domestic and foreign corporations did not violate equal protection. Our analysis in Ford, however, focused on a class of corporate defendants. The defining distinction in the class was not the form in which they chose to do business, but their residency. Justice Souter pointed out in his opinion affirming this Court’s decision that the Legislature arguably had a rational basis for the distinction.
In contrast to Ford, the classification in this case is based upon the form in which the defendants chose to do business. The complaining class is a group of plaintiffs who were injured by nonresident corporations. How can there be a rational basis to distinguish one class of tort victims from another on the basis of the legal status in which the tort-feasor chose to do business? Furthermore, the cases cited by the railroad companies focused on the defendants’ right to venue which is more limited than the rights of plaintiffs. Under Montana’s venue statutes, plaintiffs have the right, within certain limits, to choose the venue when filing an action.
This Court also recognizes that there is a commonly accepted historical justification for allowing railroad workers greater flexibility than other litigants when choosing a forums. See Ford, 250 Mont. at 197, 819 P.2d at 175. In these tort actions, the plaintiffs are all railroad employees suing out-of-state corporate defendants for alleged injuries under FELA. Relying upon the statutory language of FELA and its humanitarian and remedial purposes, the United States Supreme Court has repeatedly noted that FELA is to be given a liberal construction in favor of injured railroad workers so that it may accomplish Congress’s objectives. Consolidated Rail Corporation v. Gottshall (1994), 512 U.S. 532, 543, 114 S. Ct. 2396, 2404, 129 L.Ed.2d 427; Urie v. Thompson (1949), 337 U.S. 163, 180, 69 S. Ct. 1018, 1030, 93 L.Ed. 1282.
In this Court’s analysis of FELA claims, we have followed federal case law in giving a liberal construction in favor of injured railroad workers so that FELA may accomplish its humanitarian and remedial purposes. See Haug v. Burlington Northern, Inc. (1989), 236 Mont. 368, 770 P.2d 517; Bevacqua v. Burlington Northern, Inc. (1979), 183 Mont. 237, 598 P.2d 1124; LaBella v. Burlington Northern, Inc. (1979), 182 Mont. 202, 595 P.2d 1184. One area of FELA that this Court has liberally construed in order to further the objectives of FELA is a plaintiff’s selection of forum in actions brought under the *246 Act. We have found as “highly persuasive” the policy favoring the injured worker’s choice of forum. See Haug; LaBella.
In summary, we find that § 25-2-122(2), MCA, is unconstitutional because it violates the Equal Protection Clause of the Montana Constitution. There is no rational basis for treating tort victims injured by nonresident corporate tort-feasors differently than tort victims injured by all other nonresident tort-feasors.
In light of our ruling, there is no need to address the retroactivity or special legislation issues.
The above cases are remanded to the District Courts for proceedings consistent with our decision.
CHIEF JUSTICE TURNAGE and JUSTICE NELSON concur.