No. 01-364

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 269

RAYMOND M. GEIL and HELEN E. GEIL-HOEG,

     Petitioners and Respondents,

     v.

MISSOULA IRRIGATION DISTRICT,

     Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula,
Honorable John W. Larson, Judge Presiding

COUNSEL OF RECORD:

     For Appellant:

          Richard D. Buley, Tipp & Buley, Missoula, Montana

     For Respondent:

          Helen Geil-Hoeg, pro se, Missoula, Montana (No appearance)

     For Amici Curiae:

          Honorable Mike McGrath, Attorney General; Candace F. West,
Assistant Attorney General, Helena, Montana

          Jim Nugent, City Attorney; Susan A. Firth, Deputy City Attorney,
Missoula, Montan (Missoula Housing Authority)

          Patrick G. Frank, Worden, Thane & Haines, Attorneys at Law,
Missoula, Montana  (Clapp)

          John R. Gordon, Reep, Spoon & Gordon, Missoula, Montana (RSG Holdings)

          James A. Aiken, Jardine, Stephenson, Blewett & Weaver, Great Falls,
Montana (Aiken & Clayton)

Submitted on Briefs:  March 21, 2002
Decided:  November 26, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    The Missoula Irrigation District (MID) appeals from the Fourth Judicial District Court's final order excluding Helen Geil-Hoeg's property from the MID.  We affirm.

¶2    We re-state the issues on appeal as follows:

¶3    (1) Does the MID have standing to challenge the constitutionality of §§ 85-7-1802(2) and 85-7-1846, MCA (1997)?

¶4    (2) Does Senate Bill 284, codified as § 85-7-1802(2), MCA (1997), deny equal protection under the law?

¶5    (3) Do §§ 85-7-1802(2) and 85-7-1846, MCA (1997), deny due process of the law?

¶6    (4) Does the doctrine of *res judicata* prohibit the exclusion of land from the MID?

FACTUAL AND PROCEDURAL BACKGROUND

¶7    This case involves hundreds of petitions alleging, basically, "taxation without irrigation."  The petitioners claim that they cannot feasibly obtain the irrigation water encompassed by the MID, and, as such, they should not be required to pay a yearly tax for irrigation services.  Unable to access the irrigation waters to dump their tea in protest, the petitioners have chosen instead to take their cause first to the legislature, then to the courts.

¶8    It all began on October 14, 1922.  On this date, the Fourth Judicial District Court issued a Decree creating the MID.  The MID was a successor to the Miller-Kelly-Cave-Gannon Consolidated Irrigation Ditch which was established by the District Court in 1905.  In 1909, following establishment of the ditch company, the legislature authorized establishment of irrigation districts.

2

¶9   As set forth in the 1922 Decree, the District Court heard testimony regarding the necessity and utility of the proposed district as well as the character of the lands sought to be included in the district.  Satisfied that all of these lands were susceptible to irrigation from the local river and that the petitioners met all of the statutory requirements to establish an irrigation district, the District Court charged the MID with the operation, maintenance and complete administration of the irrigation district.  It also decreed that the water rights of the landowners were not intended to be disturbed by the establishment of the MID.  Essentially, the MID was created so that the users of the irrigation waters could equitably administer the water in the ditches and establish a taxation system to pay for irrigation expenses.

¶10  Until 1997, landowners throughout the state could petition for exclusion from an irrigation district as set forth in § 85-7-1802, MCA.  This provision, originally enacted in 1909, provides that whenever lands within an irrigation district cannot be successfully irrigated by the irrigation system in place or proposed, or if the cost of irrigating will become burdensome,

> a majority in number of the holders of title or evidence of title to the land included in such district (such holders of title or evidence of title also representing a majority in acreage of said lands) may petition the district court of the county in which the lands of the district or the greater portion thereof are situated for an order or decree changing the boundaries of the district by the elimination therefrom of such lands.

Section 85-7-1802, MCA (1995).

3

¶11  In 1997, the Montana legislature passed Senate Bill 284 (the Act).  The Act allowed the exclusion of certain small tracts of urbanized land from an irrigation district and, thus, future tax assessments, if the land was not served by the irrigation district. Section 3 of the Act temporarily amended § 85-7-1802, MCA, described above, to provide less stringent exclusion requirements for these  tracts of land.  The parties dispute whether the purpose of the legislation was to assure that the Act would only apply to the MID and no other irrigation districts in the state.  The parties agree, however, that the only exclusions granted pursuant to the legislation were to petitioners with tracts of land within the MID.

¶12  The amendment to § 85-7-1802, MCA, provided:

> Whenever a tract of record is located within an irrigation district that is partially within or adjacent to a first-class city that had a population greater than 40,000 and less than 55,000 as shown by the 1990 census, is 3 acres or smaller in size, is located within 5 miles of the exterior boundary of an incorporated city, and is not served by any district canal, system, facility, or other undertaking, the owner of the tract may petition to eliminate the tract from a district pursuant to 85-7-1846.  *(Terminates December 31, 1998 – Sec. 5, Ch. 306, L. 1997)*

Section 85-7-1802(2), MCA (1997).

¶13  Pursuant to Section 1 of the Act, codified at § 85-7-1846, MCA (1997), the exclusion requirements for petitioners who met these geographical criteria were, until the sunset date of December 31, 1998, less stringent than the requirements for other petitioners in the state who did not meet the criteria.  These other petitioners remained bound by § 85-7-1802(1), MCA (1997).  Throughout the

4

remainder of this opinion, and unless otherwise indicated, we will refer to the 1997 version of §§ 85-7-1802 and 85-7-1846, MCA.

¶14 The less stringent exclusion requirements under § 85-7-1846, MCA, provided:

> **Small-tract petition to exclude land from district.** (1) When an irrigation district has become urbanized to such a degree that the average parcel size in the district is less than 3 acres, a person holding title to a tract of land meeting the criteria in 85-7-1802(2) may petition the district court for an exclusion of the person's tract from an irrigation district, a subdistrict, or a combination of a district and subdistrict. The petition must be signed by all persons who hold title to the tract to be excluded and must specify:
>     (a) the name of the irrigation district;
>     (b) the name and address of the persons holding title to the tract;
>     (c) evidence of title to the tract to be excluded, as provided in 85-7-101 and 85-7-102;
>     (d) a copy of a map or plat of the irrigation district showing the location of the tract sought to be excluded and the relation of that land to the works of the district;
>     (e) a statement, corroborated by adequate documentation, that the users of the tract do not and cannot feasibly obtain water from the irrigation district through existing irrigation works;
>     (f) a copy of a recent tax statement documenting assessment of the tract by the irrigation district; and
>     (g) a request that the tract be excluded.
>     (2) Prior to filing the petition with the court, the petitioner shall mail a copy of the completed petition to the irrigation district subject to the petition.
>     (3) The petitioner shall file the petition, proof of mailing pursuant to subsection (2), and a $20 fee with the clerk of the district court for the court in which the irrigation district was created.
>     (4) Within 15 days of the date of the filing of the petition, the irrigation district may file an objection to the petition. To be valid, the objection must provide sufficient evidence that the conditions set forth in 85-7-1802(2) do not apply to the tract petitioned for exclusion.
>     (5) If a valid objection is filed, the court may hold a hearing if necessary to resolve the facts of the petition.
>     (6) The court shall grant the petition for exclusion:

5

(a) if no objections are filed within 15 days of filing the petition; or
(b) upon determination of the court that the petition is sufficient.
(7) The court shall forward to the irrigation district a copy of the order granting the exclusion.
(8) A petition granted in this section excludes the petitioned tract from the irrigation district for all purposes, except that it remains subject to assessment for any existing district debt. *(Terminates December 31, 1998 – Sec. 5, Ch. 306, L. 1997)*

¶15 Over 500 petitions were filed pursuant to the new legislation in all four departments of the Fourth Judicial District. The lead Petitioner, Davis O. Clapp, filed a petition reflective of the other petitions. He sought an exclusion of his land from the MID, alleging that he owned real property located within the MID subject to the Act's provisions. He further alleged that due to the property's location he could not feasibly obtain water from existing irrigation district works but, nevertheless, the MID assessed taxes on his property. The District Court consolidated all of the petitions for purposes of determining the issues of law as well as developing a procedure to deal with the disposition of all of the petitions.

¶16 The MID objected to Clapp's petition for exclusion and moved for summary judgment. The MID argued that the statutory scheme at issue was unconstitutional since it denied equal protection of the laws as well as procedural due process. It also claimed that the factual determinations at issue were barred by the doctrine of *res judicata*. Clapp and several amici curiae, including the Missoula Housing Authority, Missoula County, and RSG Holdings, opposed the

6

MID's motion. The State Attorney General declined to participate in the proceedings at this juncture.

¶17 The District Court appointed Walter E. Congdon (Congdon) as a Special Master for the purpose of addressing Clapp's petition and the MID's objections. The District Court also ordered Congdon to conduct further proceedings deemed necessary to prepare a final report, including hearings and requests for additional briefings or argument.

¶18 Congdon filed Recommended Findings of Fact and Proposed Conclusions of Law. The MID filed objections to the Proposed Conclusions of Law only. After further briefing by the parties and amici, the District Court conducted a hearing on the objections and on the motion for summary judgment.

¶19 On February 23, 2000, the District Court denied the MID's motion for summary judgment and its objections to Congdon's recommendations, and the court issued an order for further proceedings to determine the fact issues contained in the hundreds of petitions filed.

¶20 Eight months later, the District Court issued a Notice of Intent to enter a final order exempting property from the MID with respect to the petition filed by Helen E. Geil-Hoeg (Hoeg). The MID objected to the notice, and the court held two hearings regarding the sufficiency of Hoeg's petition. At the earlier hearing, the court stated that all issues raised in the Clapp case would be considered raised in the Hoeg case for purposes of appeal.

Ultimately, the District Court ordered the Hoeg property excluded from the MID. The MID appeals.

¶21 Hoeg, who is unrepresented, failed to file a response brief on appeal. In light of the constitutional issues the MID raises for our consideration, we issued an Order on January 8, 2002, inviting the Attorney General (AG) to participate in this appeal, and it accepted. In addition, we permitted amicus curiae participation on behalf of Clapp, RSG Holdings, petitioner and attorney James E. Aiken, and the City of Missoula.

STANDARD OF REVIEW

¶22 The issues presented in this appeal are purely legal in nature. In reviewing a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. *Williams v. Schwager*, 2002 MT 107, ¶ 22, 309 Mont. 455, ¶ 22, 47 P.3d 839, ¶ 22 (citations omitted).

¶23 All legislative enactments are presumed constitutional. The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 11, 294 Mont. 449, ¶ 11, 982 P.2d 456, ¶ 11.

DISCUSSION

¶**24** (1) Does the MID have standing to challenge the constitutionality of §§ 85-7-1802(2) and 85-7-1846, MCA (1997)?

¶25 The AG and the City of Missoula contend that the MID lacks standing to challenge the constitutionality of §§ 85-7-1802(2) and

8

85-7-1846, MCA, because its taxing authority is not a protectable property interest and neither the MID members nor the MID itself will suffer harm from the legislation. They contend that there is no harm in requiring the MID members using the irrigation district to assume their fair share of the costs of running the district. They insist that the MID has not shown that harm will result from excluding certain property under the 1997 legislation.

¶26 The MID maintains that it has standing to challenge statutes under which it has been sued over 500 times. In support of its argument, the MID notes that § 85-7-1846, MCA, specifically provides that a petitioner must mail an exclusion petition to the irrigation district and that the irrigation district may file an objection to the petition. Under these circumstances, the MID argues, it is the only party capable of challenging the statutes. Moreover, the MID claims that it demonstrated a threatened injury to property since the MID irrigation users, who counted on a certain amount of landowner participation in the district, will be forced to shoulder the higher cost of operating the MID if the numerous petitions for exclusion are granted.

¶27 The question of standing raises an issue as to whether a litigant is entitled to have the court decide the merits of a dispute or particular issues. *Gryczan v. State* (1997), 283 Mont. 433, 442, 942 P.2d 112, 118. In deciding whether a litigant has standing, we must determine whether the litigant whose standing is challenged is a proper party to request an adjudication of a

particular issue and not whether the issue itself is justiciable. *Gryczan*, 283 Mont. at 442, 942 P.2d at 118.

¶28 The following criteria must be satisfied to establish standing: (1) the complaining party must clearly allege past, present or threatened injury to a property or civil right; and (2) the alleged injury must be distinguishable from the injury to the public generally, but the injury need not be exclusive to the complaining party. *Gryczan*, 283 Mont. at 442-43, 942 P.2d at 118. Potential economic injury is sufficient to establish standing. *Missoula City-County Air Pollution Control Board v. Board of Environmental Review* (1997), 282 Mont. 255, 262, 937 P.2d 463, 468 (citation omitted).

¶29 Section 85-7-1846(4), MCA, provides that an irrigation district may file an objection to an exclusion petition and that, to be valid, the objection must provide sufficient evidence that the geographical conditions set forth in § 85-7-1802(2), MCA, are not applicable to the tract petitioned for exclusion. Pursuant to the statute, the irrigation district is the only entity with standing to challenge a petition for exclusion.

¶30 Furthermore, the MID, as the representative of the MID members under § 85-7-1846, MCA, has demonstrated potential economic injury to its members sufficient to establish standing in this case. If all of the petitioners seeking exclusion under the statute are successful, those landowners remaining in the MID will face increased tax assessments. This remains true under the amici's "fair share" analysis. Whether the tax increase is labeled as the

10

members' "fair share" or not, the fact remains that the MID members face the potential for adverse economic fallout resulting from the enforcement of legislative enactments which, arguably, violate their due process and equal protection rights. This is sufficient to give the MID standing to challenge the constitutionality of the provisions at issue. Moreover, since irrigation districts are precisely the entities against whom the statute is intended to operate, to deny the MID standing would effectively immunize the statutes from constitutional review. *See Gryczan*, 283 Mont. at 446, 942 P.2d at 120.

¶31 With regard to the second prong of the standing test, the MID has alleged a distinguishable injury. The statutes at issue affect only those included in specified irrigation districts rather than the general public.

¶**32** We hold that the MID has standing to challenge the constitutionality of §§ 85-7-1802(2) and 85-7-1846, MCA.

¶**33** (2) Does Senate Bill 284, codified as § 85-7-1802(2), MCA, deny equal protection under the law?

¶34 Article II, Section 4, of the Montana Constitution provides that "[n]o person shall be denied the equal protection of the laws." The MID argues that Senate Bill 284, codified as § 85-7-1802(2), MCA, was narrowly drafted to apply only to the City of Missoula. As such, the MID argues that it and its members are subject to a law which does not apply to other similarly situated urbanized irrigation districts and their members. The MID contends that, as a result, it and its members are effectively denied the

11

protections and benefits of the more restrictive exclusion requirements found in the pre-1997 legislation in violation of their constitutional rights to equal protection and procedural due process.

¶35 When addressing an equal protection challenge, this Court first identifies the classes involved and determines whether they are similarly situated. *Henry*, ¶ 27. Here, the District Court stated that, at various times, the MID seemed to challenge two sets of classifications purportedly created by the Act: (1) the MID and all other irrigation districts in the State; and (2) the MID members who use or can use the irrigation works and members of all other irrigation districts who use or can use their irrigation works.

¶36 Even a cursory glance at the legislative history indicates that the legislature intended for the relaxed land exclusion process set forth in the Act to apply only to the City of Missoula. Therefore, we conclude that the District Court correctly identified the classes involved. We further conclude that the classes are similarly situated for equal protection purposes.

¶37 At this point, our equal protection analysis necessarily shifts to a determination of whether or not this classification violated the MID's and its members' equal protection rights. In making this determination, we first address the appropriate level of scrutiny to apply to the challenged legislation. Here, the MID concedes that the rational basis test applies. The rational basis test requires the government to show that (1) the statute's

12

objective was legitimate, and (2) the statute's objective bears a rational relationship to the classification used by the legislature. In other words, the statute must bear a rational relationship to a legitimate government interest. *Henry*, ¶ 33.

¶38 Here, the 1997 legislature approved and passed Senate Bill 284 which was entitled:

> AN ACT ALLOWING INDIVIDUAL OWNERS OF TRACTS OF LAND 3 ACRES OR SMALLER IN SIZE LOCATED WITHIN THE BOUNDARIES OF CERTAIN URBANIZED IRRIGATION DISTRICTS THAT ARE NOT BEING SERVED BY THE IRRIGATION DISTRICT WORKS TO BE ELIMINATED FROM ASSESSMENTS OVER AND ABOVE CURRENT INDEBTEDNESS; AMENDING SECTIONS 85-7-411 AND 85-7-1802 MCA; AND PROVIDING AN EFFECTIVE DATE AND A TERMINATION DATE.

¶39 The District Court stated that the legislative purpose underlying the Act was to ensure that only those persons who used the irrigation works should pay for them. The District Court recognized that a fundamental principle of irrigation law is that those not benefitted by irrigation district works may not be included against their will. The District Court concluded that the legislature's attempt to amend irrigation district law to uphold this principle could not be seen as an unsound or invalid governmental purpose.

¶40 The MID claims that the while the declared purpose of the legislation was to allow persons within an urbanized irrigation district who are not using the water relief from assessments, the true purpose of the legislation was for the State to step in and resolve a local dispute between local parties in Missoula. The MID maintains that this true purpose is not legitimate.

13

¶41 Amici AG, City of Missoula, and Clapp emphasize that under the applicable test, a statute which has any rational basis must be upheld. The amici argue that § 85-7-1802(2), MCA, satisfies the rational basis test since it legitimately allows individuals who are not benefitted by irrigation waters in the MID to petition for exclusion from the district. In particular, amicus Clapp argues that the rational basis inquiry must be based on the legislature's declared purpose, and he faults the MID for engaging in "valueless conjecture" regarding the "hypothetical" goal of the legislature in this matter.

¶42 We hold that the District Court correctly concluded that the legislative objective in this case was legitimate. Whether the legislation applied to the entire state or only to Missoula, the declared objective remained the same: to offer persons who are not served by the irrigation district works relief from assessments. We hold that this is indeed a legitimate governmental objective.

¶43 Next, we analyze whether this objective bears a rational relationship to the classification used by the legislature. We have stated:

> A classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws. As we have previously held, equal protection of the laws requires that all persons be treated alike under like circumstances.

*Henry*, ¶ 36 (quoting *Davis v. Union Pacific R. Co.* (1997), 282 Mont. 233, 242-43, 937 P.2d 27, 32).

¶44 In this case, the issue is whether the creation of a relaxed land exclusion procedure for the City of Missoula bears a rational

14

relationship to the legitimate governmental objective of providing relief from irrigation assessments to those persons who cannot use the irrigation works.

¶45 The District Court concluded that the legislature's classification was rationally related to its objective. The court outlined the information presented to the legislature regarding the MID and the fact that out of 2,748 acres of land in the MID, only approximately 900 acres utilized irrigation. It noted that no other irrigation district informed the legislature of a similar situation and that the MID, unlike other districts, refused to cooperate with members seeking exclusion. Under these circumstances, the court reasoned that "[f]or the legislature to develop a remedy for a problem in one irrigation district when that same problem does not at this time appear in other irrigation districts is an example of a valid legislative choice, not a denial of equal protection."

¶46 The MID disagrees and argues that the legislation's objective bears no rational relationship to the classification used by the legislature. The MID contends that if the purpose of the legislation truly was to eliminate taxation without irrigation, a city's population and a land parcel's size and location bear no rational relationship to this supposed legitimate government interest. Moreover, the MID claims that there would be no need for a sunset provision if the legislature intended to truly combat taxation without irrigation.

¶47 Amicus Clapp argues that the legislature was only informed of the problem existing in the Missoula area, and, as a result, its narrow classification was simply "a valid legislative choice in an attempt to deal with a problem one step at a time." Along the same lines, amicus City of Missoula contends that the intensity of urbanization in Missoula as well as the lack of cooperation between the MID and its members sufficiently distinguished the MID from other irrigation districts for purposes of drafting the legislation at issue.

¶48 We conclude that the District Court correctly held that the legislature's classification was rationally related to its objective. The District Court's conclusions, as set forth above, are sound and supported in the record and legislative history, and we need not embellish upon them except to emphasize that the legislature is free to deal with one class at a time in resolving public welfare issues. We have stated that:

> the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature "is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest." If "the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied. There is no 'doctrinaire requirement' that the legislation should be couched in all embracing terms."

*Stratemeyer v. Lincoln County* (1993), 259 Mont. 147, 154, 855 P.2d 506, 511 (quoting *West Coast Hotel Co. v. Parrish* (1937), 300 U.S. 379, 400, 57 S.Ct. 578, 585-86, 81 L.Ed. 703, 713 (citations omitted)). *See also Dandridge v. Williams* (1970), 397 U.S. 471,

16

486-87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 503 ("the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all").

¶49  Here, it was not unreasonable for the legislature to address the problem of rapid urbanization as it affected irrigation districts.  Nor was it patently arbitrary for the legislature to address this problem by tailoring legislation to the unique circumstances presented by the City of Missoula.  The legislature simply "hit the evil" where it was most felt, on the basis of the evidence before it, and we will not overthrow the legislation because there are other instances in which it might have been applied.  This is especially the case since no other irrigation districts or their members informed the legislature that they faced circumstances as severe as those faced by the members of the MID.

¶50  The MID has presented no persuasive argument or authority supporting its contention that Senate Bill 284 and § 85-7-1802(2), MCA, are not rationally related to a legitimate government objective.  Therefore, it has not met its burden of establishing that the legislation is unconstitutional beyond a reasonable doubt.  We conclude that Senate Bill 284, codified as § 85-7-1802(2), MCA, does not violate the MID's right to equal protection under the law.

¶**51**  (3) Do §§ 85-7-1802(2) and 85-7-1846, MCA, deny due process of the law?

¶**52**  The MID contends that §§ 85-7-1802(2) and 85-7-1846, MCA, deprived its members of a property interest without due process of

17

the law. Specifically, it argues that the notice and hearing requirements provided for in these provisions are unconstitutionally deficient.

¶53 Article II, Section 17 of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." We have previously stated that "due process generally requires notice of a proposed action which could result in depriving a person of a property interest and the opportunity to be heard regarding that action." *Pickens v. Shelton-Thompson*, 2000 MT 131, ¶13, 300 Mont. 16, ¶ 13, 3 P.3d 603, ¶13 (quoting *Dorwart v. Caraway*, 1998 MT 191, ¶ 76, 290 Mont. 196, ¶ 76, 966 P.2d 1121, ¶ 76).

¶54 The MID argues that the protectable property interests at stake include the increased assessments that remaining members must pay if some members are allowed to exclude their land from the district. It claims that the members are unjustly deprived of their property interests without adequate notice because the Act only requires that the exclusion petition be mailed to an irrigation district before it is filed. The MID argues that the mere fact that a copy of the petition has been mailed does not provide any assurance that it would receive the petition. Also, citing *Scilley v. Red Lodge-Rosebud Irr. Dist.* (1928), 83 Mont. 282, 272 P. 543, the MID contends that the Act's notice provision fails to reach those parties who are directly affected by the exclusion of members since the Act does not require mailing the exclusion petition to every landowner in the district. In

18

addition, the MID insists that since the petition must be mailed before it is filed, the MID would have no idea when the petition was filed for purposes of filing an objection within 15 days.

¶55 The MID also claims that the Act deprives members of their property interests without an adequate opportunity to be heard. The MID takes issue with the following language of § 85-7-1846(4), MCA:

> To be valid, the objection must provide sufficient evidence that the conditions set forth in 85-7-1802(2) do not apply to the tract petitioned for exclusion.

¶56 The MID argues that this language deprived it of the opportunity to show that the users of a tract can feasibly obtain water from the irrigation district through existing irrigation works as described in § 85-7-1846(1)(e), MCA. The MID also complains that the holding of a hearing is discretionary with the court and that an exclusion petition may be granted if it is "facially sufficient, rather than upon the determination that the facts alleged in the Petition are true."

¶57 The District Court held that §§ 85-7-1802(2) and 85-7-1846, MCA, satisfied due process and were constitutionally valid. Assuming the MID had a protectable property interest at stake, the District Court concluded that the notice provisions were reasonably designed to ensure adequate notice, as evidenced by the MID's timely response to over 500 petitions. Furthermore, the court concluded that the Act provided an adequate opportunity for a hearing since a court can hold a hearing if a question of fact exists as to whether or not a petitioner is in fact "not served by

19

any district canal, system, facility, or other undertaking," within the meaning of § 85-7-1802(2), MCA.

¶58 We agree. Property owners must be notified of the assessment of their property. *Great Northern Railway Co. v. Roosevelt Co.* (1958), 134 Mont. 355, 361, 332 P.2d 501, 504. Notice sufficiently comports with due process if it is reasonably calculated, under all circumstances, to inform parties of proceedings which may directly affect their legally protected interests. *Pickens*, ¶ 15 (citation omitted). Notice must reasonably convey the required information by means which actually inform. *Pickens*, ¶ 15 (citation omitted). In applying these guidelines to determine whether a party received adequate notice, we have recognized that there is no absolute standard for what constitutes due process. *McDermott v. McDonald*, 2001 MT 89, ¶ 10, 305 Mont. 166, ¶ 10, 24 P.3d 200, ¶ 10. Rather, due process requirements are flexible and may be adapted to meet the procedural protections demanded by a specific situation. *McDermott*, ¶ 10. Accordingly, "the process due in any given case varies according to the factual circumstances of the case, the nature of the interests at stake, and the risk of making an erroneous decision." *McDermott,* ¶ 10 (citing *Sage v. Gamble* (1996), 279 Mont. 459, 464-65, 929 P.2d 822, 825).

¶59 Here, § 85-7-1846, MCA, satisfies the notice requirements of due process. Section 85-7-1846(2), MCA, provides that prior to filing the petition with the court, a petitioner must mail a copy of the completed petition to the irrigation district subject to the petition. Then, under subsection (3), the petitioner must file

proof of mailing when he or she files a petition. Not only does this constitute adequate notice, it exceeds the notice requirements of the pre-1997 legislation we considered in *Scilley* which permits notice by publication to resident landowners. *See* § 85-7-1805, MCA; *Scilley*, 83 Mont. at 286-87, 272 P. at 546.

¶60 As amicus RSG points out, the MID, in arguing that the petitioner should mail a copy of the petition to each of the thousands of landowners in the district, attempts to have its cake and eat it too. While the MID, for purposes of its equal protection and standing arguments, claimed that, as a corporation, it represents the interests of its members, it now insists that it cannot be expected to adequately represent its members' interests for due process purposes. Considering the MID's active participation in the proceedings to date, this argument is disingenuous at best.

¶61 We also conclude that § 85-7-1846, MCA, satisfies the hearing requirements of due process. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Smith v. Board of Horse Racing*, 1998 MT 91, ¶ 11, 288 Mont. 249, ¶ 11, 956 P.2d 752, ¶ 11 (citing *Connell v. State, Dept. of Social and Rehabilitation Services* (1997), 280 Mont. 491, 496, 930 P.2d 88, 91; *Small v. McRae* (1982), 200 Mont. 497, 506, 651 P.2d 982, 987 (citation omitted)).

¶62 Here, under § 85-7-1846(4), MCA, an irrigation district may file an objection to a petition within 15 days of the date of the filing of the petition. To be valid, the objection must provide

21

sufficient evidence that the conditions set forth in § 85-7-1802(2), MCA, do not apply to the tract petitioned for exclusion. Section 85-7-1846(4), MCA. In other words, the objection must show that the tract involved is not partially within or adjacent to a first-class city that had a population greater than 40,000 and less than 55,000 as shown by the 1990 census; is not 3 acres or smaller in size; is not located within 5 miles of the exterior boundary of an incorporated city; and/or the tract is served by any district canal, system, facility, or other undertaking. *See* § 85-7-1802(2), MCA. Consequently, the MID's contention that the statute deprives it of an opportunity to demonstrate that the users of a tract can feasibly obtain water from the irrigation district through existing irrigation works is meritless. Indeed, the District Court held two hearings regarding the MID's objections to Hoeg's petition for exclusion regarding this very issue.

¶63 Moreover, pursuant to § 85-7-1846(5), MCA, a district court may hold a hearing if necessary to resolve the facts of the petition. A court may only grant a petition for exclusion if no objections are filed or if it finds that the petition is *sufficient*. Section 85-7-1846(6), MCA. Contrary to the MID's contentions, the statute does not permit a district court to refuse to hold a hearing or summarily grant a petition if it is facially sufficient but factually unsupported. Rather, § 85-7-1846, MCA, provides an opportunity to be heard at a meaningful time and in a meaningful manner.

¶64 The MID has presented no persuasive argument or authority supporting its contention that §§ 85-7-1802(2) and 85-7-1846, MCA, deny due process of law. Consequently, it has not met its burden of establishing that the legislation is unconstitutional beyond a reasonable doubt. We hold that §§ 85-7-1802(2) and 85-7-1846, MCA, afford irrigation districts and their members due process of law.

¶65 (4) Does the doctrine of *res judicata* prohibit the exclusion of land from the MID?

¶66 The MID asserts that application of the Act violates the principles of *res judicata* with respect to the original 1922 court decree establishing the MID. Citing *O'Neill v. Yellowstone Irr. Dist.* (1912), 44 Mont. 492, 121 P. 283, the MID contends that, upon its establishment in 1922, the court conclusively found that all of the land within the district is susceptible to irrigation and is served by the MID's irrigation facilities. The MID claims that a party cannot come back several years after a judgment and re-litigate the same issues simply because "times have changed." It contends that the fact that landowners today may not have access to the MID's irrigation ditches does not change the factual determinations made in 1922.

¶67 The District Court rejected this argument. It stated that because the subject matter and factual issues before it differed from those before the district court in 1922, the doctrine of *res judicata* did not bar the exclusion of land under the Act. The court reasoned that if the MID prevailed in its *res judicata* argument, no member of an irrigation district would be able to

23

withdraw from the district after entry of the decree and expiration of the period of appeal. It stated that this was not the legislature's intent since it has, since 1909, enacted provisions allowing for the exclusion of land from irrigation districts. The court also stated that, unlike in *O'Neill*, the petitioners here are not arguing that their land was not served by the irrigation works when the district was established. Rather, the petitioners in this case maintain that their land is not now served.

¶68 The doctrine of *res judicata* acts as a bar to litigation if the following four elements are met: (1) the subject matter of each action must be the same; (2) the parties or their privies of each action must be the same; (3) the issues must be the same and relate to the same subject matter; and (4) the capacities of the persons must be the same in reference to the subject matter and to the issues between them. *State ex rel. Harlem Irr. Dist. v. Montana Seventeenth Jud. Dist. Ct.* (1995), 271 Mont. 129, 132, 894 P.2d 943, 945 (citations omitted).

¶69 Here, the subject matter and the issues of the action in 1922 and the instant action are not the same. In 1922, the subject matter involved establishing the MID. Unlike in *O'Neill,* the establishment of the MID is not at issue today. Rather, the subject matter of today's dispute involves whether or not certain tracts of land may be excluded from the irrigation district since, due to urbanization within the MID, the MID's irrigation works only serve some MID members. As the District Court stated, such petitions for exclusion from established irrigation districts have

24

been permissible since 1909. *See* 1909 Mont. Laws Ch. 146, Sec. 23. In other words, parties have been able to argue that "times have changed" and their land is no longer benefitted by irrigation district waters for nearly a century.

¶70  The MID has failed to show that the four *res judicata* elements are met in this case. Accordingly, we hold that the doctrine of *res judicata* does not prohibit the exclusion of land from the MID.

¶71  We affirm.


                                          /S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE

25

Justice Terry N. Trieweiler dissenting.

¶72  I concur with the majority's conclusion that the Missoula Irrigation District has standing to challenge the constitutionality of § 85-7-1802(2), MCA (1997), and § 85-7-1846, MCA (1997) (terminated Dec. 31, 1998, Section 5, Ch. 306, L. 1997).

¶73  I dissent from the majority's conclusion that the statutes in question did not violate the constitutional right to equal protection of the law and although it was not an issue raised by the parties, I would point out for future reference that the statutory classification also violates the prohibition at Article V, Section 12 of the Montana Constitution against "special" legislation.

¶74  Sections 85-7-1802(2) and 85-7-1846, MCA, treat the Missoula Irrigation District (an urban area) differently than other urbanized irrigation districts in the state of Montana.  It allows landowners to be excluded from payment of future assessments in the district based on statutory criteria which are simpler than those that apply to any other irrigation district in the state.  The ultimate result is to erode the financial stability of the Missoula District while at the same time assuring that other districts are not similarly affected.

¶75  The Missoula Irrigation District is a corporation.  We have previously held that corporations are entitled to the same equal protection of the law as individuals.  *See Montana Power Co. v. Public Service Commission* (1983), 206 Mont. 359, 364, 671 P.2d 604, 607.

26

¶76 I agree that whether or not the statutes at issue in this case are constitutional depends on whether there was a rational basis for their enactment. I also agree that whether there was a rational basis is properly analyzed pursuant to the two-part test set forth in *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 33, 294 Mont. 448, ¶ 33, 982 P.2d 456, ¶ 33. Finally, I agree with the majority's conclusion that there was a legitimate state objective for the statute in question. That objective, based on the title of the act itself, was to allow "Individual owners . . . that are not being served by the irrigation district works to be eliminated from assessments over and above the current indebtedness; . . . ." However, I disagree with the majority's conclusion that the statute as enacted and the classifications that it creates bear a rational relationship to the purported objective of the legislation.

¶77 If the legitimate objective of the legislation was to actually make it easier for property owners in urbanized irrigation districts who are not being served by irrigation to avoid the expense of providing irrigation to others and withdraw from the district, then it makes no sense to limit the beneficial purpose of this statute to only those who reside in the Missoula Irrigation District and are fortunate enough to have the bill's sponsor as one of their fellow residents within the district. It is clear that that is what was done. There is only one irrigation district within the state of Montana to which this statute applies and the

27

statute's sponsor and his fellow legislators made clear that was their intent.

¶78 When introducing the bill, Senator Michael Halligan, from Missoula, stated:

> This bill is an attempt, in a very clean way, to allow people to be excluded from a district only for those parcels that are small. If there is a way to fine- tune this bill to make sure it applies more to the Missoula situation and doesn't affect anybody else, we will certainly try to do that.

Section 4, Ch. 306, L. 1987 (SB 284 Senate Ag. Committee Hearing (Feb. 12, 1997)).

¶79 During discussion of Senator Halligan's bill in executive session of the senate committee to which it was introduced, the following comments were made:

> Sen. Jergeson: It looks like he's tightened this bill down so it will only apply to one irrigation district in the state without mentioning any particular city by name.
>
> . . . .
>
> Sen. Devlin: I hope this doesn't affect anyplace else. We've got the population in here, but I would sure hate to see it affect Butte Silverbow.
>
> Doug Sternberg: My indication from Senator Halligan, in putting these amendments together, was avoiding some kind of specialized intent in this Legislation, but drawing it narrow enough to address the Missoula situation. I think the population insert is going to be the closest [figure]. According to the information given to me by the Missoula Deputy County Attorney, Missoula County is the only one that will fit in this particular formula at this time.

Section 4, Ch. 306, L. 1997 (SB 284 Senate Ag. Committee Exec. Action (Feb. 12, 1997)).

¶80 There was even concern that while the statute was narrowly enough drawn to affect only Missoula, it could become applicable to other irrigation districts in the future simply by growth of the

28

communities near which they are located. The Helena Valley, Billings, Great Falls and the area around Flathead County were all mentioned. The solution to that problem was to sunset the bill before those communities grew to meet the criteria set forth in the statute. For example:

> Sen. Beck: There is a lot of concern about this affecting things down the road. What if we submitted this for two years? It will serve its purpose and put a hammer on those people. I don't think this is a problem in all districts.

> Sen. Devlin: I could support that. We could take a look at this in two years and if it's not working by then, take the sunset off and let it go.
> Sen. Beck: That would make us all feel a little better.

> Doug Sternberg: It's drawn. Senator Halligan was thinking of that.

Section 4, Ch. 306, L. 1997 (SB 284 Senate Ag. Committee Exec. Action (Feb. 17, 1997)).

¶81 For that reason, the statute was sunsetted to terminate on December 31, 1998, eliminating any possibility that it might affect any other irrigation district in the state.

¶82 The majority correctly states the law but then ignores it. As noted in ¶ 43 of the majority Opinion, we have stated:

> A classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws. As we have previously held, equal protection of the laws requires that all persons be treated alike under like circumstances.

*Henry*, ¶ 36 (quoting *Davis v. Union Pacific R. Co.* (1997), 282 Mont. 233, 242-43, 937 P.2d 27, 32).

¶83 Sections 85-7-1802(2) and 85-7-1846, MCA, do not treat all persons alike under like circumstances. Property owners in an

urbanized irrigation district in Missoula are allowed to freely remove themselves from taxation by that district simply by showing they do not benefit from the irrigation whereas similarly situated property owners in other urbanized irrigation districts around the state are denied the same option. Not only has the Missoula Irrigation District been singled out for unfavorable treatment, the property owners in the Missoula Irrigation District have been singled out for favorable treatment. The sole reason is that a legislator whose property was apparently not benefitted by irrigation happened to own property within the Missoula Irrigation District. However, that is not a rational basis for the class distinctions that have been drawn.

¶84 The majority rationalizes its conclusion by stating that it was not arbitrary for the Legislature "to address this problem by tailoring legislation to the unique circumstances presented by the City of Missoula." However, the City of Missoula's circumstances were not unique and Halligan's colleagues acknowledged as much when Senator Jergeson stated:

> It looks like he's [Halligan] tightened this bill so that it will only apply to one irrigation district in the state without mentioning any particular city by name. Apparently some of the other irrigation districts are feeling the same urban pressure.

Section 4, Ch. 306, L. 1997 (SB 284 Senate Ag. Committee Exec. Action (Feb. 17, 1997)).

¶85 The only thing unique about the City of Missoula was that the irrigation district included a property owner who happened to be a state senator.

30

¶86 Because of the broad language in the majority Opinion which appears to approve this type of special interest legislation, it should also be mentioned in passing (although MID did not raise the issue on appeal) that the legislation in question violates Article V, Section 12 of the Montana Constitution which provides as follows:

> The legislature shall not pass a special or local act when a general act is, or can be made, applicable.

¶87 It is obvious from any fair reading of the legislative history of the statute that the Legislature went to great lengths to make the effects unique to Missoula when in fact the problem the legislation sought to remedy was not unique to Missoula. A general act which would have made it easier for all land owners in urban irrigation districts who do not benefit from irrigation to be excluded from the irrigation district would have more honestly accomplished the stated purpose of the legislation. It was not necessary to the stated purpose of the legislation to make the act local.

¶88 We defined a special statute within the meaning of the corresponding section of our previous constitution in *State ex rel Redman v. Meyers* (1922), 65 Mont. 124, 127, 210 P. 1064, 1065-66, where we stated:

> A special statute is one which relates to a particular person or things of a class [citation omitted] or one made for individual cases and for less than a class. [Citation omitted.] Or one which relates and applies to particular members of a class, either particularized by the express terms of the Act or separated by any method of selection from the whole class to which the law might, but for such limitation, be applicable. [Citation omitted.] The test of a special law is the

31

appropriateness of its provisions and the objects that it excludes. It is not, therefore, what a law includes, but what it excludes that determines whether it is special. [Citation omitted.]

¶89 We went on to state:

A fair test for determining whether a statute is special is this: does it operate equally upon all of a group of objects which, having regard to the purpose of the legislature, are distinguished by characteristics sufficiently marked and important to make them a class by themselves?

*State ex rel Redman v. Meyers*, 65 Mont. at 128, 210 P. at 1066. (Citation omitted.)

¶90 Providing expeditious relief for property owners in the Missoula Irrigation District who are not benefitted by irrigation while denying it to the property owners of every other urbanized irrigation district in the state who are similarly not benefitted by irrigation and conversely undermining the financial integrity of the Missoula Irrigation District while at the same time protecting other urbanized irrigation districts from the same danger does not treat all similarly situated groups the same given the purpose of the legislation. Therefore, for future reference, it should be noted that this special interest legislation also clearly violates Article V, Section 12 of the Montana Constitution.

¶91 For these reasons, I dissent from the majority Opinion. Having concluded that the statutes in question are unconstitutional because in violation of the equal protection clause found at Article II, Section 4 of the Montana Constitution, I would not address the remaining issues related to due process and res judicata.

/S/ TERRY N. TRIEWEILER