HERLIHY, EXECUTOR, RESPONDENT, v. DONOHUE ET AL.,
APPELLANTS.

(No. 3,849.)

(Submitted June 24, 1916.   Decided November 10, 1916.)

[160 Pac. 000.]

*Trespass—Militia—Officers—Destruction of Property—Justifi-
cation—Pleading—Governor—Powers—State — Police Power
—Subordinate Military Officers—Civil Liability.*

Militia — Trespass — Destruction of Property — Civil Liability — Justifica-
tion—Pleading.
  1.  The defense in an action in trespass that, while engaged in re-
  storing law and order in ·a city proclaimed by the governor to be in
  a state of insurrection, defendants, as officers of the organized state
  militia, were justified in having plaintiff's stock of liquors destroyed
  for an alleged infraction of a rule limiting their sale to certain hours,
  must be specially pleaded both at common law and under the Codes;
  in the absence of such pleading, evidence to show justification was
  inadmissible.

Same—Destruction of Property—Due Process of Law.
  2.  Conceding (but not deciding) that an order of the commanding
  officer of the state militia closing saloons during certain hours in
  times of public disorder has the force and effect of a statute, yet
  punishment for disobedience of such an order by way of destruction of
  the stock of liquors of the offender, without notice, a hearing or an
  adjudication is unwarranted, and for their destruction he is liable in
  damages.

Same—Governor—Powers.
  3.  The Constitution and laws of the state are the charters of the
  governor's powers, and in them he must find the authority for his
  official acts.

Same—State—Police Power—Extent.
  4.  Under its police power, the state may regulate or control every
  act or thing within its jurisdiction which tends to subvert the govern-
  ment, to injure the public, to destroy the morals of the people, or to
  disturb the peace and good order of society.

Same—Destruction of Private Property—Compensation.
  5.  It is only within the narrow limits of actual and pressing necessity
  that private property may be taken and destroyed for the public good.

Same—Subordinate Officers—Civil Liability—Rule.
  6.  A subordinate officer of the state militia may defend his acts
  against civil liability by reference to the order of his superior officer,
  unless it is so palpably illegal or without authority that a reasonably
  prudent man ought to recognize its invalidity or want of authority, in
  which event obedience furnishes no excuse for a wrongful act even
  though disobedience may subject the offender to punishment at the
  hands of a military tribunal.

Same—Subordinate Officers—Civil Liability—Case at Bar.
  7.  Inasmuch as the commanding officer of the state militia might,
  if the circumstances of the case warranted it, lawfully have given an

order for the destruction of a stock of intoxicating liquors in times of public disorder which he had been directed by the governor to suppress, subordinate officers commanded to carry out the order to destroy were, under the rule last above stated, relieved from civil liability for the ensuing damage.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Michael Herlihy, as executor of the estate of Dennis Herlihy, deceased, against Dan J. Donohue and others. Judgment for plaintiff. Defendants appeal. Affirmed.

*Mr. J. B. Poindexter,* Attorney General; *Mr. W. H. Poorman,* Assistant Attorney General; *Mr. Jesse B. Roote,* and *Mr. H. C. Hopkins,* for Appellants, submitted a brief; *Mr. Poorman* argued the cause orally.

There is not any presumption of law that either a public official or private individual has the indisputable right to destroy private property, neither is there any presumption that a public official either maliciously, or wantonly, or unnecessarily, injures or destroys private property, but there is a presumption: "That official duty has been regularly performed." (Sec. 7962, Rev. Codes; *Beck* v. *Holland,* 29 Mont. 234, 74 Pac. 410.) The presumption which protects the individual in his private rights, and the presumption which protects the officer in his official rights, being equal, the burden is cast upon the plaintiff to establish every material fact, unaided by presumption. "So far as presumptions are concerned, the evidence is at equipose at the very outset of the case. The scales can be made to dip in plaintiff's favor only by the presentation on his part of further evidence." (*Cooper* v. *Romney,* 49 Mont. 119, 128, Ann. Cas. 1916A, 596, 141 Pac. 289.) And in this case where the officials were charged and commanded both by the law and the supreme executive authority of the state to conduct a military campaign in the suppression of a long-continued, well-organized and determined insurrection, the destruction of individual liberty, human life and property, were well within the official's authority when apparently necessary to enable him

to discharge his official duty (*In re McDonald*, 49 Mont. 454, Ann. Cas. 1916A, 1166, L. R. A. 1915B, 988, 143 Pac. 947), and the burden was on the plaintiff to prove not only ownership, destruction and value of the property, but that it was destroyed without reason or apparent or real necessity.

The general defense relied upon by the defendants was that they were acting in an official capacity, charged with the performance of a certain duty, to-wit: suppression of an insurrection; that the force with which and in which they were acting was not a mere plan, but that the national guard was a real entity, recognized by both state and federal authority, governed by the same rules that govern any army in its operations as such. In other words, that the military force is the last appeal; that it is called into requisition only when all other agencies have failed; and that *it must* succeed or chaos and anarchy will result. From the very nature of things it is, therefore, vested with plenary power to do and perform everything which is apparently necessary to the accomplishment of its purpose. (*Commonwealth ex rel. Wadsworth* v. *Shortall*, 206 Pa. 165, 98 Am. St. Rep. 759, 65 L. R. A. 193, 55 Atl. 952; *Moyer* v. *Peabody*, 212 U. S. 78, 53 L. Ed. 410, 29 Sup. Ct. Rep. 235; *Luther* v. *Bordon*, 7 How. (U. S.) 1, 12 L. Ed. 581; *Mitchel* v. *Harmony*, 13 How. (U. S.) 115, 14 L. Ed. 75; *Hatfield* v. *Graham*, 73 W. Va. 759, L. R. A. 1915A, 175, 81 S. E. 532; *Riggs* v. *State*, 3 Cold. (Tenn.) 85, 91 Am. Dec. 272; *State* v. *Brown*, 71 W. Va. 519, 77 S. E. 243, Ann. Cas. 1914C, 1, 45 L. R. A. (n. s.) 996, 1024; *United States* v. *Clark*, 31 Fed. 710; *In re Boyle*, 6 Ida. 609, 45 L. R. A. 832, 96 Am. St. Rep. 286, 57 Pac. 706; Haire's American Const. Law, 924, 917.) The destruction of the liquor was a military necessity, and if any recovery may be had by the plaintiff by reason of the fact that he violated orders, that recovery must be had from the government, and not from the official. (*Drehman* v. *Stifel*, 41 Mo. 184, 97 Am. Dec. 268, affirmed in 8 Wall. (U. S.) 595, 19 L. Ed. 508; *Wellman* v. *Wickerman*, 44 Mo. 486.

*Messrs. Maury, Templeman & Davies, Mr. Edwin M. Lamb,* and *Mr. M. J. Doepker,* for Respondents, submitted a brief; *Mr. H. L. Maury* and *Mr. Doepker* argued the cause orally.

Appellants admit that respondent's stock of liquor was destroyed by them; they seek to excuse themselves from liability by pleading justification in their order closing the saloons after seven P. M. and before eight A. M. They do not plead necessity for destruction of the liquor, as imperative, if their order was to be obeyed, but merely allege that "the commanding officer, with certain of his subordinates, officers and soldiers, destroyed the said stock of liquor belonging to plaintiff herein, as a necessary measure to prevent drunkenness, breaches of the peace, and rioting, and as an example to other liquor dealers." "Private property is sacred from the violent interference of others, and whoever takes, injures or destroys it, is a trespasser unless he shows justification. Necessity—*extreme, imperative* and *overwhelming*—may constitute such justification, but expediency or utility *will not answer. (McLaughlin* v. *Green,* 50 Miss. 465; see also *Fluke* v. *Canton,* 31 Okl. 718, 123 Pac. 1049; *Franks* v. *Smith,* 142 Ky. 232, Ann. Cas. 1912D, 319, L. R. A. 1915A, 1141, 134 S. W. 484; *Ex parte Milligan,* 4 Wall. (U. S.) 2, 18 L. Ed. 281; *In re McDonald,* 49 Mont. 454, Ann. Cas. 1916A, 1166, L. R. A. 1915B, 988, 143 Pac. 947.)

The matter set up in justification is insufficient as a matter of law. Necessity—extreme, imperative and overwhelming— may constitute a justification, but expediency or utility will not be sufficient. (*McLaughlin* v. *Green, supra; Hale* v. *Lawrence,* 21 N. J. L. (1 Zab.) 714, 47 Am. Dec. 190; *Meadows* v. *Gulf, C. & S. F. R. Co.,* 48 Tex. Civ. 466, 107 S. W. 83.)

As to appellants' contention that the court committed error by excluding a line of evidence as to the rights, duties and immunities of subordinate military officers in yielding obedi-. ence to the commands of a superior officer, we urge to the contrary that the weight of authority is conclusively against this contention, see *Franks* v. *Smith, supra,* wherein the supreme court of Kentucky considered carefully and spoke positively, ·

that a member of the state militia as a soldier in active service is not relieved from civil liability for his acts while so engaged on the ground that he acted in obedience to orders received through the regular military channels. (See, also, 2 Hare's American Constitutional Law, 760, *et seq.; Hogue* v. *Penn,* 3 Bush (Ky.), 663, 96 Am. Dec. 274.)

Answering appellants' contention as to the burden of proof, respondent submits that the presumption as to official duty being regularly performed is rebutted as soon as plaintiff established that they destroyed the property of Dennis Herlihy;—this fact being admitted in the affirmative defense—the burden of proof, if there was any, was immediately shifted to the defendants to show by a preponderance of evidence that such destruction was justified. (*Lake Shore & M. S. Ry. Co.* v. *Felton,* 103 Fed. 227, 43 C. C. A. 189.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 1, 1914, the governor of this state issued a proclamation declaring the county of Silver Bow in a state of insurrection. A portion of the organized militia under command of Major Dan J. Donohue, with Wm. Morse and Wade Gobel, subordinate officers, was ordered to the scene of the trouble for the declared purpose of restoring peace and good order and rehabilitating the civil authority in that county. Upon taking command of the troops Major Donohue issued an order closing saloons and other places where intoxicating liquors were for sale. This order was thereafter modified so as to permit such places to be open for business from 8 A. M. until 7 P. M. daily. On September 19 Major Donohue ordered Morse, Gobel and certain enlisted men to take from the saloon of Dennis Herlihy the stock of liquors therein and destroy the same, and the order having been executed, this action in trespass was brought to recover actual damages to the amount of the value of the property destroyed, and punitive damage in the sum of $1,000.

The complaint alleges the ownership and value of the property, the trespass and destruction of the property, and that the defendants acted wrongfully and with malice. The answer consists of a general denial and certain affirmative allegations which set forth the proclamation of the governor, the original and amended order by the commanding officer, and allege that the plaintiff Dennis Herlihy, while the amended order was in full force and effect and with knowledge of such order, willfully violated the same by opening his saloon and dispensing intoxicating liquors within the prohibited hours of September 17; that at the time there was great disorder in Silver Bow county; that the commanding officer "had reason to believe and to expect that certain of the insurrectionists in said county, and law-breakers therein, would cause riots to occur, and do violence to both property and human life; that in view of these facts said commanding officer of said military forces believed that it was imperatively necessary to forbid the sale or distribution or giving away of intoxicating liquors later than seven o'clock in the evening and before eight o'clock in the morning; and in order to prevent the plaintiff herein from furnishing liquors to persons within the hours during which persons were forbidden to sell or furnish liquors to others, the said commanding officer, with certain of his subordinate officers and soldiers, destroyed the said stock of liquors belonging to the plaintiff herein as a necessary measure to prevent drunkenness, breaches of the peace and rioting, and as an example to other retail liquor dealers to prevent them as well as the plaintiff herein from either selling or giving away intoxicating liquors later than seven o'clock in the evening, and before eight o'clock in the morning."

The reply admits the official character of each of the defendants; admits that the proclamation, the order and amended order were issued; that the appealing defendants destroyed the property in question, and denies all other facts pleaded by way of defense. After issues were joined, but before trial, Dennis Herlihy died and the executor of his last will was substituted as a party to the action. Upon the trial plaintiff abandoned his

claim for punitive damages, made out a *prima facie* case in other respects, and called Major Donohue as a witness to prove the destruction of the property. On cross-examination counsel for defendants sought to prove the facts pleaded in the answer and denied by the reply, but the offered evidence was excluded as not within the range of proper cross-examination. In their case in chief defendants again offered the same character of evidence but it was objected to upon the following, among other, grounds: ''That there is no plea in the answer that the destruction of the property or any of the property was at all necessary to prevent the increasing or spreading out of the insurrection or to aid in suppressing any insurrection.''

The objection was sustained and the evidence was excluded. The court dismissed the action as to certain other defendants originally joined, and directed a verdict in favor of plaintiff and against these appealing defendants, leaving to the jury for determination the amount of compensatory damages only. From a judgment entered upon a verdict for plaintiff, this appeal is prosecuted. The correctness of the trial court's ruling in excluding defendants' offered evidence is the question presented for review.

1. The right of a person to acquire, hold and protect property; to be secure in his possession of it against unreasonable seizure, and to retain it until deprived of it by due process of law, is, as among English-speaking people, as old as the common law itself. Its origin antedates by many years the guaranty contained in *Magna Charta*. The right itself was the inheritance of our people who inhabited the territory acquired from Great Britain at the close of the Revolution, and was adopted by the people of the territory of Montana by its first legislative assembly, and was continued in force thereafter. It is now embodied in the Bill of Rights, Article III of our state Constitution. When, therefore, plaintiff alleged and proved his ownership of the property; its destruction by these defendants without his consent, and his damages consequent upon that act, he made out a *prima facie* case. Indeed, in the light of the pleadings, little proof was required from plaintiff, for by their admission of

plaintiff's ownership and their destruction of the property, defendants rendered themselves liable in nominal damages at least unless they could offer legal justification for their act. The answer considered in its entirety must be viewed as in the nature of a confession and avoidance—an admission of the destruction of private property and an attempt to justify it.

That it is possible for a set of circumstances so to combine as to present a legal justification for the act of a public officer [1] in destroying private property against the will of the owner and leaving the owner remediless, cannot be gainsaid. The contention made in the trial court and here is that, though these defendants might possibly have set forth facts sufficient to constitute a defense, they failed to do so; in other words, that the facts pleaded do not constitute a justification for the *destruction* of plaintiff's property. That a defense of this character must be specially pleaded was the rule at common law. It is also the rule in most of the states where the Code system prevails, and in this jurisdiction by statute. (Subd. 2, sec. 6540, Rev. Codes.)

Let it be conceded in the first instance that the order of [2] Major Donohue closing the saloons from 7 P. M. until 8 A. M. daily, had the force and effect of a statute; and that for a violation of that order any reasonable punishment might have been inflicted; still we cannot concede to the organized militia, or to any department of our government, or to any function of government, the right to convict and punish without notice, a hearing or an adjudication. Before any punishment could be inflicted upon Herlihy, notice of the charge against him, an opportunity for him to prepare and present his defense, if any he had, and an adjudication of his guilt by some competent tribunal, were indispensable. It is nowhere contended that Herlihy pleaded guilty, while the charges preferred against him in the answer are denied in the reply. The answer fails to allege that Herlihy was accused, notified, tried or convicted before his property was confiscated, and in the absence of these necessary allegations the question of the extent of the punishment which might have been inflicted, does

not arise. Under this answer the destruction of the property cannot be justified as a penalty imposed for a violation of the order. Neither can it be justified, as "a military necessity." The stock of liquors was not needed for, nor devoted to, the use of the troops. A state of war did not exist and the destruction of the property was not necessary to prevent it falling into the hands of the enemy.

The defense must rest upon the theory that the order was a reasonable and necessary police regulation and the destruction of the property a valid exercise of the state's police power. The order in question as amended would read as follows:

"5. All saloons and places where intoxicating liquors are sold at retail as a beverage will be closed at once and kept closed [except from 8 A. M. until 7 P. M. daily] until further orders. The stock of liquors of any person or persons violating this rule will be destroyed and all violators severely punished." By section 5, Article VII, of the Constitution, the supreme executive power is vested in the governor, who is charged with the duty to see that the laws are faithfully executed. Section 6 provides the means available to the executive, when necessary, to execute the power or perform the duty devolved upon him: "The governor shall be commander-in-chief of the militia forces of the state, * * * and shall have power to call out any part or the whole of said forces to aid in the execution of the laws, to suppress insurrection or to repel invasion." When the organized militia was called into the service of the state in 1914, it but performed the function of the strong arm of the executive by which he could aid in executing the law or in suppressing the insurrection. Independently of the executive it had no power or authority, except possibly with reference to its own internal affairs. It acted as an executive agency, subject to the orders of the governor and bound by the authority which he might lawfully exercise. The governor is at all times [3] amenable to the Constitution and laws of the state. They are the charters of his powers and in them he must find the authority for his official acts. While he may not exceed their bounds in any instance, he may invoke any remedy provided

by them for the purpose whenever the exigencies of a particular case call for it.  One of the instrumentalities the use of which is sanctioned by the law for the preservation of peace and good order, is the police power of the state; and while no court or text-writer has assumed to define with accuracy the limits of the [4] power, it may be said generally that the state may regulate or control every act or thing within its jurisdiction which tends to subvert the government, to injure the public, to destroy the morals of the people, or to disturb the peace and good order of society.  That the state may enforce a proper police regulation by the imposition of fine or imprisonment, or both, is [5] conceded generally.  That within the narrow limits of *actual and pressing necessity*, private property may be taken and destroyed for the public good, scarcely admits of debate. The most common illustration of this is the demolition of a building to prevent the spread of a conflagration.  But in every instance where such a right has been exercised and questioned, the decision upholding the right makes it clear beyond controversy that only the most overriding necessity will justify or excuse the officer ordering such destruction.

It is not alleged that the rioters in Butte were threatening or about to break into Herlihy's saloon to obtain intoxicating liquors and that destruction of the stock was necessary to prevent the excesses which might reasonably be expected to follow the free access of disorderly disposed persons to the liquors. It is not pretended that the arrest and imprisonment of Herlihy and the closing of his place of business during the insurrection would not have been equally efficacious as a means of preventing drunkenness, disorder or rioting.  Under constitutional government such as ours, the destruction of private property without compensation to the owner must be the last resort, available only in the presence of imminent and overwhelming necessity which brooks no delay.  In failing to allege facts sufficient to disclose such necessity, the answer fails to make out a justification for the trespass, and for this reason the offered evidence was properly rejected.

2. Upon the trial, evidence was introduced to the effect that defendants Morse and Gobel were concerned in the destruction of the property to the extent only that they obeyed the order of their superior officer. This was not controverted and may be accepted as an established fact.

The circumstances under which a subordinate military officer [6] may be acquitted for acts otherwise wrongful, upon the score that he merely obeyed a command from one over him in authority, have received much consideration. The authorities are not agreed upon the question presented here, and a review would be of little, if any, aid. To permit an inferior military officer to stop and question the validity of every command of his superior, would at once destroy discipline and convert an army into a debating society without a monitor or referee. The same Constitution which guarantees the security of life and property, provides for organized military forces in this state. When our people adopted the Constitution with its reference to the militia, they must have had in contemplation militia organized, officered and disciplined as such forces were generally at the time. An army without discipline is a mob. The highest duty of the soldier is to obey, for upon obedience all discipline must depend. Necessity is the foundation for organized military forces, and to the extent that necessity requires it, obedience to orders is demanded. But necessity can never require obedience to an order manifestly illegal or beyond the authority of the superior to give, and therefore reason and common sense seem to justify the rule that the inferior military officer may defend his acts against civil liability by reference to the order of his superior, unless such order bears upon its face the marks of its own invalidity or want of authority. If the order is one which the superior might lawfully make, the inferior cannot refuse obedience until he shall have investigated the surrounding circumstances and determined for himself that they justify the order in the particular instance. If, on the other hand, the order is so palpably illegal or without authority that any reasonably prudent man ought to recognize the fact, obedience thereto furnishes no excuse for a wrongful act, even though disobedience

may subject the offender to punishment at the hands of a military tribunal.

In the present instance the order for the destruction of the [7] property was one which Major Donohue might lawfully have made if the circumstances of the case warranted it, and since it was valid on its face, the subordinate officers could not refuse obedience until they instituted and carried on their own investigation to ascertain whether the surrounding circumstances justified it. They could rely upon its apparent validity and justify their acts in obeying it. We believe the views expressed are in harmony with enlightened reason and best serve the double purpose of securing private rights and protecting subordinate military officers in the execution of the duty which they may be called upon to perform.

The judgment against the defendant Donohue is affirmed. The cause is remanded to the district court with directions to enter judgment dismissing the action as against defendants Morse and Gobel. The respondent may recover one-half of his trial court costs and one-half of his costs on appeal from the defendant Donohue. The defendants Morse and Gobel may recover from respondent one-half of the trial court costs incurred by the appealing defendants and one-half of the costs incurred by appellants on appeal.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.