JUSTICE RICE,
dissenting.
¶104 I believe the District Court permitted, and participated in, deprivations of Mountain Water’s constitutional right to due process. I do not take this position lightly, but have no hesitation in doing so, given the record. I would reverse.
¶105 The Fifth Amendment of the United States Constitution, applied to the States through the Fourteenth Amendment, provides “No person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.” Cases brought under the Takings Clause generally involve three issues: (1) whether a “taking” has occurred; (2) whether the property taken is being put to “public use;” and (3) whether “just compensation” has been paid. See Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 123 (1978); Kelo v. City of New London, 545 U.S. 469, 477-78 (2005); First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 315 (1987). The Court’s analysis follows this rubric, answering the merits question by affirming that the taking of Mountain Water’s property is a “more necessary *231 public use.”
¶106 However, the Court’s merits conclusions are premised upon its determination that no due process violation occurred. The Court reaches this conclusion despite having to acknowledge that the District Court imposed an “undoubtedly difficult” litigation schedule upon Mountain Water, that the District Court overlooked the repeated findings of the Standing Master that Missoula had engaged in extensive discovery abuses “to gain a tactical advantage,” that the District Court erred, albeit not reversibly in the Court’s view, by rejecting Mountain Water’s evidentiary positions, and that there is an essential strength to Mountain Water’s assertion that the District Court exhibited a judicial preference for condemnation. The Court chooses not to connect these dots, but I would hold that these problems, along with additional problems discussed herein, clearly demonstrate that Missoula’s taking of Mountain Water did not comport with due process.
¶107 As famously stated by Justice Bushrod Washington, sitting as Circuit Justice, the right to acquire and possess property is a fundamental right that is included “of right, to the citizens of all free governments; and which have, at all times, been enjoyed by the citizens of the several states which compose this Union.” Corfield v. Coryell, 6 F. Cas. 546, 551-52 (C.C.E.D Pa. 1823). Along with life and liberty, it is one of the three pillars of freedom present in virtually every charter and constitution since the colonial days and Revolutionary Era. See Thomas J. Bourguignon, The Poacher, the Sovereign Citizen, the Moonlighter, and the Denturists: a Practical Guide to Inalienable Rights in Montana, 77 Mont. L. Rev. 5, 11 (2016). In Montana, the right to possess property is considered so fundamental that our Constitution deems it “inalienable.” City of Bozeman v. Vaniman, 264 Mont. 76, 79, 869 P.2d 790, 792 (1994) (citing Mont. Const. art. II, § 3). In Herlihy v. Donohue, we stated:
The right of a person to acquire, hold and protect property... is, as among English-speaking people, as old as the common law itself. Its origin antedates by many years the guaranty contained in Magna Charta. The right itself was the inheritance of our people who inhabited the territory acquired from Great Britain at the close of the Revolution, and was adopted by the people of the territory of Montana by its first legislative assembly, and was continued in force thereafter. It is now embodied in the Bill of Rights ...
52 Mont. 601, 607, 161 P. 164, 165 (1916). It is “elementary” that this right goes beyond mere possession; it consists of the free use, *232 enjoyment, and disposal without control or diminution “save by the law of the land.” Buchanan v. Warley, 245 U.S. 60, 74 (1917). These property rights are “among the most revered in our law and traditions ... integral aspects of our theory of democracy and notions of liberty.” City of Norwood v. Horney, 853 N.E.2d 1115, 1128 (Ohio 2006) (citations omitted). As James Madison wrote, “that alone is a just government which impartially secures to every man, whatever is his own.” 14 Papers of James Madison 266 (R. Rutland et al. eds. 1983). With this important historical and legal backdrop in mind, I turn to the questions at hand: What process was Mountain Water due before Missoula could take its property? And, did the District Court “impartially secure” to Mountain Water its rights in that process?
¶108 As the Court states, due process “is not a technical conception with a fixed content unrelated to time, place and circumstances.” Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)). Rather, it is “flexible and calls for such procedural protections as the particular situation demands.” Mathews, 424 U.S. at 334 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The specific dictates of due process to a given situation generally requires consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government’s interest, includingthe function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 334-35. Although the outer parameters of due process in this context have yet to be defined, prior decisions and legislation have filled in some of the void.
¶109 Most basically, due process required Mountain Water receive notice and a meaningful opportunity to be heard before Missoula deprived it of its property. U.S. v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993) (citations omitted); see also Geil v. Missoula Irrigation Dist., 2002 MT 269, ¶ 61, 312 Mont. 320, 59 P.3d 398 (“The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.”) (internal quotations and citation omitted); Mathews, 424 U.S. at 333 (“[t]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.”).
¶110 Due process also protected Mountain Water from an unconstitutional burden shift, just as it does for criminal defendants. *233 See Francis v. Franklin, 471 U.S. 307, 313 (State prohibited from using evidentiary presumptions that have effect of relieving State of its burden); see also Western & A.R. Co. v. Henderson, 279 U.S. 639, 644 (1929) (striking down civil statute that unfairly shifted the burden of proof). It is within the State’s power to regulate the burden of persuasion, “unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.” Speiser v. Randall, 357 U.S. 513, 523 (1958) (citing Snyder v. Massachusetts, 291 U.S. 87, 105 (1934)). Thus, where a person has at stake an interest of “transcending value,” due process requires the margin of error inherent in fact-finding to be reduced as to that person by placing the burden of proof on the State. Speiser, 357 U.S. at 525-26. Due process therefore required the City of Missoula to bear the burden of proving every element of its case because, under Article II, § 3, the right to possess property is fundamental, i.e. a “transcending value.” The Montana Legislature codified this Constitutional mandate in § 70-30-111, MCA, which provides the State must establish every element of condemnation by a preponderance of the evidence.
¶111 Mountain Water also had constitutional and statutory discovery rights. We have previously stated that when the State attempts to deprive a citizen of property, the citizen is “entitled to procedural due process which includes, among other things, the ability to discover information relevant to the case against them along with the identity of the witnesses who are expected to testify and the substance of the expected testimony.” Wilson v. Dep’t of Pub. Serv. Regulation, 260 Mont. 167, 172, 858 P.2d 368, 371 (1993). Furthermore, given the similarity in the fundamental nature of the right to property and the right to liberty, Mountain Water was due at least the limited discovery right that criminal defendants have before the government takes their liberty from them. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (Due process requires prosecutors to avoid an “unfair trial” by making available “upon request” evidence “favorable to an accused ... where the evidence is material to either guilt or to punishment.”). This right is provided as part of the Constitution’s basic “fair trial” guarantee. See U.S. v. Ruiz, 536 U.S. 622, 628 (2002). At the same time, in contrast to the right to criminal discovery, which is restricted, the scope of civil discovery is broad and requires nearly total mutual disclosure of each party’s evidence prior to trial. Hickman v. Taylor, 329 U.S. 495, 507 (1947). The Legislature imposed the broad scope of civil discovery on eminent domain proceedings in § 70-30-201, MCA, which provides the Montana Rules of Civil Procedure govern *234 condemnation actions. Therefore, Mountain Water had a basic constitutional right to discovery under due process, as well as a much broader statutory right to any information sought if it appeared “reasonably calculated to lead to the discovery of admissible evidence.” Degen v. U.S., 517 U.S. 820, 825-26 (1996) (quoting Fed. R. Civ. P. 26(b)(1)).

A. Unconstitutional Burden Shift

¶112 The District Court unconstitutionally shifted the burden and relieved Missoula of proving every element of condemnation.[1] Under the Fifth Amendment, before Missoula could take Mountain Water’s property, it was required to show its taking was for a “public use.” Kelo, 545 U.S. at 477-78 (citing U.S. Const. amend. V). Article II, § 29 of the Montana Constitution imposes a similar requirement. The Legislature further codified the “public use” requirement in Montana’s condemnation statute, § 70-30-111, MCA.
¶113 Citing Missoula’s Water Utility expert, the District Court supported its finding that Missoula’s ownership was a “more necessary public use” with the following language:
Important public policy objectives are promoted by municipal ownership, including predictability and stability in rates, ability to obtain low cost financing not available in the private sector, lack of a profit motive, coordination with City services, planning and development efficiencies, greater transparency and accessibility to leadership and reflection of local preferences including conservation and stewardship.
The District Court’s broad statement is a mandatory presumption that municipal ownership of a water system is always a “more necessary public use.” The District Court did not state that public policy objectives will be promoted by Missoula’s ownership; rather, it held unequivocally that public policy objectives are promoted by any municipal ownership. In essence, according to the District Court’s analysis, because Missoula is a city, and because this is a water supply, there is no further need to establish by evidence the “public use” requirement of the Fifth Amendment of the U.S. Constitution, Article II, § 29 of the Montana Constitution, or § 70-30-111, MCA. Instead, and in complete contradiction to two constitutions and a state statute, the District Court made it incumbent upon Mountain Water to rebut that presumption—to the extent that such a task would even have *235 been possible, given the breadth of the District Court’s statement and its predisposition. However, due process required Missoula, not Mountain Water, to carry that burden because the right to possess property is a fundamental right. Speiser, 357 U.S. at 525-26; Mont. Const. art. II, § 3. The District Court violated Mountain Water’s due process rights when it relieved Missoula of its burden to prove the “public use” element of eminent domain.
¶114 This solitary holding by the District Court was just the proverbial tip of the iceberg of its improper analysis. The District Court’s reasoning in this mode was lengthy, waxing broadly about the many virtues it saw in public ownership, and contrasting the many vices it saw in private ownership. For example: “Local government ownership and management of water systems allows the stable pursuit of [] important public purposes,” whereas “Private companies are not well suited to the promotion of public interest goals”; “Under municipal ownership, important financial decisions regarding the Water System can be based on promoting public health, safety and welfare rather than on decisions regarding returns on investments for a large and growing utility conglomerate”; “Revenue requirements for municipally owned water systems are less than privately owned systems because there is no need for profit”; “Protection and promotion of the public health, safety and welfare is the fundamental duty of a municipality. Private corporations have no duty to protect and promote the public health, safety and welfare.” These statements, and many more like them in the District Court’s order, further demonstrate that the District Court held a predispositional perspective that led it to relieve Missoula of the constitutional burden to prove that ownership by, specifically for this case, the City of Missoula, was a more necessary public use.
¶115 This unconstitutional presumption was not harmless. In the context of a jury verdict in a criminal case, the Supreme Court has stated “it has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside.” Sandstrom v. Montana, 442 U.S. 510, 526 (1979) (internal quotations and citation omitted). This is because courts have no way of knowing whether the verdict was based on the unconstitutional presumption or not. Sandstrom, 442 U.S. at 526. What we have here is far more damning: the District Court explicitly told us it relied on the unconstitutional presumption.

*236
B. Due Process Right to Discovery and Meaningful Opportunity

¶116 Missoula’s flagrant discovery abuses denied Mountain Water its due process right to “discover information relevant to the case against them along with the identity of the witnesses who are expected to testify and the substance of the expected testimony.” Wilson, 260 Mont. at 172, 858 P.2d at 371. The District Court likewise denied Mountain Water its due process right to a “meaningful opportunity to be heard,” James Daniel, 510 U.S. at 48, when it refused to continue the trial to remedy Missoula’s discovery abuses.
¶117 As noted above, Mountain Water was due at least the minimal discovery rights afforded criminal defendants. That right includes a protection against a series of abuses which, taken as a whole, have the cumulative effect of a due process violation. City of Billings v. Peterson, 2004 MT 232, ¶ 47, 322 Mont. 444, 97 P.3d 532 (citing Kyles v. Whitley, 514 U.S. 419, 432-54 (1995)). A due process violation exists if the State’s discovery abuse amounted to a deprivation of a fair trial. Kyles, 514 U.S. at 433-34 (citation omitted).
¶118 Missoula’s discovery tactics were Machiavellian, to put it politely. If I condoned winning at all costs, and was not concerned about the rule of law, I might even be impressed.
¶119 First, Missoula—a government actor, it should be emphasized—converted its electronic files from native format into unusable PDF portfolios when it produced the files to Mountain Water. When Mountain Water notified Missoula of the problem, Missoula refused to produce the documents in a usable form, making three further sets of production, consisting of over 17,000 documents, in the unusable PDF format. The Special Master ruled against Missoula, ordering it to produce the documents in a usable format, and noting it had a multitude of options to do so, including utilizing e-discovery software already in its counsel’s possession or simply producing the documents in native form. After extensive delay, Missoula finally complied with the Special Master’s order three weeks before trial and delivered 26,581 documents to Mountain Water for its review.
¶120 Next, Missoula refused to produce communications between it and the town of Apple Valley, California, on its mistaken claim of privilege. The Special Master again ruled against Missoula, concluding it wrongfully withheld the documents and ordering Missoula to produce them. However, by the time Missoula produced the documents, depositions had already been taken and discovery had closed. Then, Missoula refused to produce internal emails regarding the assignments and interactions between it and one of its experts. Once again, the *237 Special Master ruled against Missoula and ordered it to produce the documents, admonishing that the emails were “clearly discoverable.” Missoula’s foot-dragging kept these documents from Mountain Water until twelve days before trial.
¶121 Missoula then engaged in similar games with other experts, producing nine supplements to its expert disclosures after discovery closed and continuing to supplement its expert disclosures even during trial, including by supplementation of new documents that its experts used on the witness stand. Supplementation is required and generally appropriate, of course, but here Missoula used the process—abused it, that is—to delay its obligation to disclose and hide information from Mountain Water as long as it could. Several of Missoula’s experts testified under oath that Missoula had not asked them for copies of documents supporting their opinions, despite outstanding discovery requests from Mountain Water for those very documents, demonstrating that Missoula never attempted to gather responsive documents and had no intention of complying with disclosure requirements.
¶122 The cumulative effect of these discovery abuses goes far beyond sharp litigation practices and constitutes a clear due process violation. Peterson, ¶ 47. Far from owning up to its actions, Missoula repeatedly asserts Mountain Water cannot point to one piece of prejudicial evidence and thus no prejudice occurred, a position that the Court adopts. However, first, it is incorrect to state that there was no prejudice. Missoula repeatedly stated throughout discovery it had no plan for capital expenditures, managing the system, or fixing leaks. Then, a few days before trial, the City surprised Mountain Water with an expert disclosure that included a 5-year capital expenditure plan with figures in the millions and an organizational chart detailing a plan to integrate Mountain Water employees into the City’s employment structure. Second, on the eve of trial, the City supplemented an expert disclosure to provide a new administrative cost analysis, which played a critical role in the District Court’s findings. These are just two examples, and they are prejudice enough.
¶123 But further, Missoula fails to recognize one of the true costs of discovery delay and abuse is the time expended by the other side to respond to that mischief. Whether the 26,581 documents Missoula dumped on Mountain Water three weeks before trial contained a smoking gun can only be ascertained after the 26,581 documents are reviewed by Mountain Water. Missoula intentionally and strategically put Mountain Water in a time bind shortly before trial as other trial preparations were occurring, forcing the company to spend precious *238 time reviewing the documents to determine whether there was information useful to its case. If there wasn’t, Missoula had nonetheless successfully wasted Mountain Water’s critical trial-preparation time. If there was, Missoula had disclosed the evidence before trial to give it plausible deniability to a contention it had withheld evidence. Missoula’s diabolical tactics hardly demonstrate that Mountain Water received a fair trial, one “worthy of confidence.” Kyles, 514 U.S. at 434. I sincerely hope this kind of gamesmanship with experts and a 26,581 page “document dump” three weeks before trial—repeated violations found by the Standing Master—would preclude the government from taking someone’s liberty. Likewise, because property is also a fundamental right, it should be no different when the government is taking someone’s property. The cumulative effect of Missoula’s discovery abuse was to deprive Mountain Water of its procedural due process right to a fair trial as guaranteed by the Constitutions of Montana and the United States.
¶124 The deprivation of a fair trial is particularly stark when contrasted with the very reasonable alternative that Mountain Water repeatedly requested: a continuance of a few months. Although due process does not require the best opportunity to be heard, it does require a meaningful opportunity to be heard. James Daniel, 510 U.S. at 48; Geil, ¶ 61. Granting a continuance of a few months, which would have allowed Mountain Water to review all of Missoula’s delayed discovery materials, would have ensured Mountain Water’s opportunity to be heard was meaningful. Denying the continuation ensured it was not. The District Court therefore violated Mountain Water’s due process rights.[2]

C. Statutory Right to Discovery

¶125 Even if the District Court’s refusal to continue the trial would not have constituted a due process violation, it abused its discretion by not continuing the trial in light of § 70-30-206, MCA, which requires the District Court to set a trial schedule that will not prejudice any party’s position.
¶126 Mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation. Hickman, 329 U.S. at 507. “Modern instruments of discovery, together with pretrial procedures, ‘make a *239 trial less a game of blindman’s bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.’ ” Richardson v. State, 2006 MT 43, ¶ 22, 331 Mont. 231, 130 P.3d 634 (quoting U.S. v. Procter & Gamble Co., 356 U.S. 677, 682 (1958)). Without an adequate opportunity to obtain discoverable information, a party is “at a significant disadvantage in litigating the merits of the case.” Preston v. Montana Eighteenth Judicial Dist. Ct., 282 Mont. 200, 206, 936 P.2d 814, 817 (1997). Achieving a just result—the foundational goal of our courts and legal system—is “contingent upon full disclosure.” Richardson, ¶ 63. Litigants who purposely halt the discovery process therefore “act in opposition to the authority of the court and cause impermissible prejudice to their opponents.” First Bank (N.A.)-Billings v. Heidema, 219 Mont. 373, 376, 711 P.2d 1384, 1386 (1986).
¶127 This Court strictly adheres to the policy that dilatory discovery actions shall not be dealt with leniently. Richardson, ¶ 56 (citation omitted). As we have said, the trial courts, and this Court on review, must remain intent upon punishing transgressors rather than patiently encouraging their cooperation. Richardson, ¶ 56 (citation omitted). It is “a maxim of our rules of discovery that the price for dishonesty must be made unbearable to thwart the inevitable temptation that zealous advocacy inspires.” Richardson, ¶ 56 (citation omitted).
¶128 Under § 70-30-202, MCA, six months is the default time period between service of summons and trial in a condemnation case. However, the guideline is flexible, and the court may “shorten!] or lengthen!] that time for good cause.” Section 70-30-202, MCA. Discovery and trial is required to proceed as expeditiously as possible, unless doing so will “prejudice] any party’s position ....” Section 70-30-206(5), MCA. District courts are required to give the proceedings “priority consideration.” Section 70-30-206(5), MCA.
¶129 In its order denying Mountain Water’s motion to continue, the District Court explicitly stated it would not continue the trial, regardless of prejudice. The District Court’s reason for its blanket denial of a new trial date regardless of prejudice was that it would have difficulty calendaring a new trial. Such a rigid stance is in violation of § 70-30-206(5), MCA, which required the District Court to not proceed as expeditiously as possible if doing so prejudiced either party. Further, given § 70-30-206(5)’s requirement that the District Court give the proceeding “priority consideration,” a full calendar is not a satisfactory excuse to deny a meritorious request for a new trial date. I am hard pressed to conceive of a better showing of “just cause” for a *240 continuance than blatant discovery abuse, or what would be more prejudicial than insisting on a rigid trial schedule regardless of discovery abuse. I would hold the District Court abused its discretion in denying Mountain Water’s request for a continuance.

A Word for the Legislature

¶130 What should be taken from this case is that condemnation of private property in Montana is subject to a long procedural process, but that ultimately the merits of the case are decided under a lenient, subjective legal standard. What is a “more necessary” use? First, the statutory standard of “more necessary” itself is vague and amorphous, leaving the determination largely to the subjective views of the trial judge. Then, the Supreme Court has here determined to review the trial court’s determination of “more necessary” as a finding of fact, which is a very narrow and deferential standard of review, meaning that such findings are usually affirmed and are difficult to reverse by an appellate court. If the Legislature would prefer that the law provide a higher substantive bar to be reached before private property can be condemned, the statute will need to be revisited.

Conclusion

¶131 Here, however, there is something an appellate court could and should do; errors of constitutional magnitude were made in the procedural process, and they should be remedied. Apparently hell-bent on condemnation, the District Court adopted an unconstitutional presumption in favor of condemnation, violating Mountain Water’s due process right to have Missoula bear the burden of proving every element of its case, as required by the Fifth Amendment of the United States Constitution, Article II, § 29 of the Montana Constitution, and § 70-30-111, MCA. The District Court further violated Mountain Water’s due process right to a meaningful opportunity to be heard when it denied Mountain Water’s several motions for a continuance, on constitutional and statutory grounds. The District Court also violated Mountain Water’s due process right by permitting Missoula to engage in abusive and prejudicial discovery tactics that deprived Mountain Water of a fair trial. Missoula knew what it was doing, and the District Court should have stopped it; instead, it played along. The District Court thus failed to “impartially secure” the constitutional rights of Mountain Water. Missoula may well have proved its case in a fair trial, but here, there wasn’t one.
¶132 I have no sympathies for the corporate entities involved in this case; my sympathies are for all Montanans who expect that their *241 judicial system will not fail to enforce constitutional guarantees.
¶133 I dissent.

 Mountain Water argues that its due process rights were violated and refers to the burden shift as “an abstract policy preference for municipal ownership in and of itself.”

 This Court could likewise have remedied this violation by granting Mountain Water’s meritorious petition for supervisory control, where we originally stated we were “troubled by what appears to be the City’s obstruction of discovery to gain a tactical advantage.” The Court denied Mountain Water’s request over my dissent.